[No. S113272. Mar. 29, 2004.]

CARLEEN OLMSTEAD et al., Plaintiffs and Respondents, v. ARTHUR J. GALLAGHER & COMPANY et al., Defendants and Appellants.

COUNSEL

Tarkington, O'Connor & O'Neil, Tarkington, O'Neill, Barrack & Chong, Thomas C. Burch and Robert A. Roth for Defendants and Appellants.

Appell & Wolf, Mervyn H. Wolf, Brent I. Rosenzweig and Marc J. Appell for Plaintiffs and Respondents.

## OPINION

**BAXTER, J.**—We granted review in this case to address whether Code of Civil Procedure section 128.5,[1] as amended in 1994, authorizes trial courts to award sanctions, including attorney fees, for bad faith litigation actions or tactics that arise from a claim initiated after December 31, 1994. We conclude that the statutory language of section 128.5 and related statutes, and other indicia of legislative intent, establish that section 128.5 does not apply to conduct arising from a claim initiated after December 31, 1994. To the extent the Court of Appeal reached a contrary result, its judgment must be reversed.

### FACTS AND PROCEDURAL HISTORY

As the result of a September 1999 auto accident, plaintiffs—Carleen Olmstead and Cheri Rose—sued defendants—Arthur J. Gallagher & Company (Gallagher), an insurance broker, and Vicki Sundgren, a Gallagher representative—to recover underinsured motorist benefits allegedly due under an insurance policy. Following a trial, the jury returned a defense verdict on all claims. After entry of the judgment, defendants moved, under sections 128.5 and 128.7,[2] to recover attorney fees and expenses they allegedly incurred as a result of misconduct by plaintiffs during discovery and trial. Defendants claimed plaintiffs lied about the existence of a critical document and concealed information about other insurance policies.

The trial court denied sanctions under section 128.7 because defendants failed to comply with the statute's 30-day notice requirement.[3] The trial court

---

[1] All further unlabeled statutory references are to the Code of Civil Procedure.

[2] Section 128.7, discussed in detail below, applies specifically to actions filed on or after January 1, 1995. (*Id.*, subd. (i).) This statute prohibits "pleading[s], petition[s], written notice[s] of motion, and other similar paper[s]" that are submitted for an improper purpose or lack colorable legal or factual support (*id.*, subds. (a), (b)), and it authorizes sanctions, including attorney fees, for such improper practices (*id.*, subds. (c), (d)).

[3] In July and August 2001, when defendants' sanctions motion was filed and denied, section 128.7 provided that following service of notice of a sanctions motion on the opposing party or counsel, the notice of motion could be filed in court only after allowing a 30-day period for

refused sanctions under section 128.5 because it determined that section 128.5 is entirely inapplicable to lawsuits initiated after December 31, 1994.

After the trial court entered its order, defendants sought reconsideration. In their reconsideration motion, defendants stated they had discovered new evidence that during discovery, plaintiffs submitted a false "no" answer to a defense interrogatory inquiring whether they were pursuing any other lawsuit related to the accident. Defendants urged this conduct was sanctionable under section 2023, which prohibits "misuse[] of the discovery process" by, among other things, "[m]aking an evasive response to discovery." (*Id.*, subd. (a)(6); see also *id.*, subd. (b)(1).) The trial court granted reconsideration but denied sanctions on the merits. The court reasoned that an unequivocal, though false, answer is not "evasive" within the meaning of section 2023.

Defendants appealed from the order denying sanctions.[4] They urged that section 2023 authorized sanctions for plaintiffs' false interrogatory response, that sanctions for plaintiffs' other deceptive conduct was available under both sections 128.5 and 128.7, and that the trial court had inherent authority to award sanctions in any event.

The Court of Appeal reversed and remanded. The appellate court concluded that section 128.5 applies, even in post-1994 lawsuits, to bad faith litigation tactics except those related to the filing of .complaints or cross-complaints, or the making or opposing of motions. The court expressly disagreed with consistent statements or assumptions in the case law (see text discussion, *post*) that section 128.5, as amended in 1994, and section 128.7 create two mutually exclusive sanctions schemes, with the former statute applicable only to actions commenced before, and the latter only to suits begun on or after, January 1, 1995.

The Court of Appeal also determined that section 2023 authorizes sanctions for discovery "misuses" beyond those, such as "evasive" responses, that are specifically enumerated in the statute. The Court of Appeal concluded that a "blatantly false" interrogatory response, even if not technically "evasive," must qualify as a sanctionable "misuse" of the discovery process.

Plaintiffs sought review on both the section 128.5 and section 2023 issues. We granted review, but we limited the issues to whether "section 128.5 authorizes sanctions for bad faith conduct or litigation abuses that occurred after December 31, 1994, or whether the imposition of sanctions for such

---

correction or withdrawal of the challenged pleading, petition, motion, or similar paper. (§ 128.7, subd. (c)(1), as enacted by Stats. 1994, ch. 1062, § 3, p. 6398.) Defendants' counsel admitted the motion under consideration did not comply with the 30-day requirement.

[4] The trial court's order was appealable, pursuant to Code of Civil Procedure section 904.1, subdivision (a)(2), as an order made after a final judgment.

conduct is governed solely by . . . section 128.7."[5] We now conclude that section 128.5 does not apply to post-1994 actions and proceedings.

## DISCUSSION

In *Bauguess v. Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942] (*Bauguess*), we held that trial courts may not award attorney fees as a sanction for misconduct unless they do so pursuant to statutory authority or an agreement of the parties. (*Id.* at pp. 634–639.) Although *Bauguess* acknowledged that trial courts possess inherent powers to supervise judicial proceedings, our decision placed limits on these powers to avoid the "serious due process problems" that would arise if trial courts had unfettered authority to award fees as sanctions. (*Id.* at pp. 637–638.) Hence, *Bauguess* prohibited a trial court from using fee awards to punish misconduct unless the Legislature, or the parties, authorized the court to impose fees as a sanction.

The Legislature enacted section 128.5 in response to our decision in *Bauguess*. (Stats. 1981, ch. 762, § 2, p. 2968 ["It is the intent of this legislation to broaden the powers of trial courts . . . by authorizing monetary sanctions . . . not presently authorized by the interpretation of the law in Bauguess"].) Originally, section 128.5 authorized "[e]very trial court" to order payment of reasonable expenses, including attorney fees, incurred "as a result of [a litigation opponent's] tactics or actions not based on good faith which are frivolous or which cause unnecessary delay." (Former § 128.5, subd. (a), as added by Stats. 1981, ch. 762, § 1, p. 2968.) In its original form, section 128.5 further provided that "[f]rivolous actions or delaying tactics include, but are not limited to, making or opposing motions without good faith." (*Ibid.*)

In 1985, the Legislature amended section 128.5 to authorize trial courts to award reasonable expenses, including attorney fees, as a sanction for "bad-faith *actions or tactics* that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a) (section 128.5(a)), as amended by Stats. 1985, ch. 296, § 1, p. 1335, italics added.) The 1985 amendment also added subdivision (b) to section 128.5, providing, inter alia, that " '[a]ctions or tactics' include, but are not limited to, the making or opposing of motions or

---

[5] The imprecise issue-limiting language in our grant order is misleading in one respect. The application of sections 128.5 and 128.7 does not depend on whether the *abuses* described in those statutes "occurred" before January 1, 1995, or on or after that date. Instead, section 128.5 speaks of "actions or tactics [that] arise from a *complaint filed*, or a *proceeding initiated*, on or before December 31, 1994." (*Id.*, subd. (b)(1), italics added.) Section 128.7 applies, by its terms, "to a *complaint or petition* filed on or after January 1, 1995, and any other pleading, written notice, or other similar paper filed in *that matter*." (*Id.*, subd. (i), italics added.) The parties have not mistaken our meaning.

the filing and service of a complaint or cross-complaint." (*Id.*, former subd. (b)(1), as added by Stats. 1985, ch. 296, § 1, p. 1335.)

In 1994, the Legislature amended section 128.5 again. (Stats. 1994, ch. 1062, § 1, p. 6395.) Subdivision (b)(1) was modified to provide that sanctionable " '[a]ctions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint *only if the actions or tactics arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994.*" (§ 128.5, subd. (b)(1) (section 128.5(b)(1)), as amended by Stats. 1994, ch. 1062, § 1, p. 6396, italics added.)

When the Legislature made this change, it simultaneously enacted sections 128.6 and 128.7. (Stats. 1994, ch. 1062, §§ 2, 3, pp. 6396–6399.) Section 128.7 is modeled on rule 11 of the Federal Rules of Civil Procedure (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 690, fn. 13 [34 Cal.Rptr.2d 386, 881 P.2d 1083] (*Crowley*)), and sets requirements for every "pleading, petition, written notice of motion, or other similar paper" presented to a court. (§ 128.7, subds. (a), (b).) Under section 128.7, every such document must be signed by counsel, or personally by an unrepresented party. (*Id.*, subd. (a).) The signer thereby certifies that to the best of his knowledge, information, and belief, and after reasonable inquiry, the document is not presented for an improper purpose (such as harassment, delay, or needless increase in litigation costs) and contains no allegations, factual or legal contentions, claims, defenses, or denials that lack colorable support. (*Id.*, subd. (b)(1)–(4).) Section 128.7 authorizes monetary sanctions for violations, including reasonable resulting expenses and attorney fees, but only after the alleged violator has received notice and a specified time to correct or withdraw the challenged pleading. (*Id.*, subd. (c)(1), (2).)[6]

As enacted in 1994 and thereafter in effect, section 128.7 applies only "to a complaint or petition filed *on or after January 1, 1995*, and any other pleading, written notice of motion, or other similar paper filed in" such a proceeding. (*Id.*, subd. (i), italics added.) Section 128.7 originally had a "sunset date"—i.e., a date on which it would automatically expire unless extended—of January 1, 1999. (*Id.*, former subd. (j), as enacted by Stats. 1994, ch. 1062, § 3, p. 6399.) That date has twice been extended, first to January 1, 2003 (§ 128.7, former subd. (j), as amended by Stats. 1998, ch. 121, § 2), and then to January 1, 2006 (§ 128.7, subd. (j), as amended by Stats. 2002, ch. 491, § 1).

Section 128.6, adopted concurrently with section 128.7 and the 1994 amendment to section 128.5 (Stats. 1994, ch. 1062, § 2, p. 6396), originally

---

[6] In 2002, this period was reduced from 30 to 21 days. (§ 128.7, subd. (c)(1), (2), as amended by Stats. 2002, ch. 491, § 1.)

provided that it would take effect on January 1, 1999, unless section 128.7 remained in effect beyond that date. (§ 128.6, former subd. (f), as enacted by Stats. 1994, ch. 1062, § 2, p. 6397.) In 1998, when section 128.7's sunset date was extended to January 1, 2003, section 128.6 was amended accordingly to reflect that it would take effect on that later date unless section 128.7 was further extended (as has since occurred). (§ 128.6, subd. (f), as amended by Stats. 1998, ch. 121, § 1.) Thus, section 128.6 will become operative only if and when section 128.7 is no longer in effect. *Subject to this contingency, section 128.6 reenacts the exact sanctions scheme currently set forth in section 128.5, deleting only section 128.5's limitation to pre-1995 actions.*

■ Plaintiffs contend that the Legislature's 1994 amendment to section 128.5, and its simultaneous enactment of section 128.7, established two mutually exclusive sanctions regimes, with section 128.5 solely applicable in proceedings initiated on or before December 31, 1994, and section 128.7 solely applicable in proceedings initiated after that date. Defendants, like the Court of Appeal, insist that the statutes overlap in proceedings initiated after 1994, and that while the 1994 amendment to section 128.5 eliminated its application to certain pleadings and motions abuses committed in post-1994 proceedings, the amendments did not affect the statute's application, in such proceedings, to other forms of litigation misconduct it had previously covered. For the reasons that follow, we agree with plaintiffs' reading.

"Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) To accomplish this task, we look first to the words of the statute, because they " 'generally provide the most reliable indicator of legislative intent.' " (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539], quoting *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) Of course, the language of a specific section must be construed in the context of the larger statutory scheme of which it is a part. (E.g., *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876]; *Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760]; see *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900–901 [135 Cal.Rptr.2d 30, 69 P.3d 951].)

■ Section 128.5(a) provides, in relevant part, that "[e]very trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." Hence, section 128.5(a) only permits a trial court to award attorney fees as a sanction if it finds that a party engaged in certain bad faith "actions or tactics."

Section 128.5(b)(1) defines the "actions or tactics" that are subject to sanction under section 128.5(a). As amended in 1994, section 128.5(b)(1) provides that these "include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint *only if the actions or tactics arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994.*" (Italics added.)

■ Most reasonably read, this language suggests the following: Sanctionable "actions or tactics" are confined to behavior that arises from a complaint filed, or a proceeding initiated, prior to 1995. Conduct that arises from a suit commenced after December 31, 1994, does not qualify as "actions or tactics" within the meaning of section 128.5(b)(1), so it furnishes no basis for an award of sanctions under section 128.5(a).

The Court of Appeal determined that the time limitation set forth in section 128.5(b)(1) extends only to pleadings and motions abuses. As a result, the court concluded, section 128.5(a) continues to authorize fee awards in post-1994 proceedings for litigation abuses unrelated to pleadings or motions, such as those at issue here.

For several reasons, we find this interpretation unpersuasive. In the first place, it contradicts the most plausible import of section 128.5's words, particularly the way in which the statute repeats the crucial phrase "actions or tactics."

As indicated above, section 128.5(a) limits its reach to "bad-faith *actions or tactics*" (italics added). Section 128.5(b)(1) then defines "actions or tactics" as "*includ*[*ing*]*, but . . . not limited to*" misconduct related to pleadings and motions. (Italics added.) This definition obviously encompasses *both* misconduct in the described category *and* other misconduct. Section 128.5(b)(1) then further provides that "the actions or tactics" are included "only" if they arise in a pre-1995 action or proceeding. The Court of Appeal's construction fails to explain why this second reference to "actions and tactics" does not, like the first, "include" *both* kinds of misconduct, and thus limit *all* misconduct otherwise covered by section 128.5 to that arising in pre-1995 actions.

The Court of Appeal appears to have understood amended section 128.5(b)(1) as follows: "Actions or tactics" shall "include" misconduct related to pleadings and motions "only" in cases filed before 1995. In later cases, by contrast, "actions or tactics" shall have a more limited scope, but will still encompass *some* kinds of litigation abuse. That is, they shall *exclude* misconduct related to pleadings and motions, but not the other forms of misconduct that were also "included" for purposes of pre-1995 actions.

However, this strains the language of section 128.5(b)(1) by overlooking that the word "include" is followed by the phrase "*but are not limited to.*" (Italics added.) This latter phrase seems an integral part of the definition of "actions or tactics" *for all purposes.* Thus, the most natural reading of the subdivision is that "actions or tactics" "include, but are not limited to" *both* kinds of misconduct in actions filed *both* on or before, and after, December 31, 1994.

The Court of Appeal observed that it would have been simpler for the Legislature to have added a separate subdivision to section 128.5 if it wished to limit 128.5(a) for all purposes. Yet the "usual and ordinary meaning" (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140]) of the language the Legislature did use in the 1994 amendment to section 128.5(b)(1) most strongly supports the conclusion that the date limitation therein set forth applies to all forms of sanctionable "actions or tactics."

■ This interpretation is confirmed by viewing the language of section 128.5(b)(1) in the context of the larger statutory scheme. As noted above, the 1994 bill that amended section 128.5 (Assem. Bill No. 3594 (1993–1994 Reg. Sess.) (Assembly Bill No. 3594)) also provided for the enactment of sections 128.6 and 128.7. Under the scheme adopted at that time, section 128.7, which provides a separate, self-contained sanctions system applicable to motions and pleadings abuses, took effect *the day after December 31, 1994.* (§ 128.7, subd. (i).) Section 128.6, which mimics the sanctions scheme set forth in section 128.5, only takes effect if section 128.7 is repealed. (§ 128.6, subd. (f).) The dates chosen for the operation of each of these statutes suggest that the Legislature did not intend for them to apply concurrently. Rather, they appear to establish a tripartite scheme, with section 128.5 governing in claims filed on or before December 31, 1994, section 128.7 governing in claims filed after that date, and section 128.6 governing in the event that section 128.7 is repealed.

We may also "test our construction against those extrinsic aids that bear on the enactors' intent." (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 93 [40 Cal.Rptr.2d 839, 893 P.2d 1160].) Both the structure of the Legislature's regulation of misconduct in litigation, and the legislative history of section 128.5, support our conclusion that section 128.5(a) does not reach litigation abuses in proceedings commenced after December 31, 1994.

In particular, the Legislature would not have enacted section 128.6, and made its operation contingent upon the repeal of section 128.7, if section 128.5(a) were meant to apply concurrently with section 128.7. As noted above, section 128.6 mirrors section 128.5, except its definition of sanctionable "actions or tactics" is not limited to conduct that stems from an action

initiated on or before December 31, 1994. (§ 128.6, subd. (b)(1).) Section 128.6 expressly states that it does not operate concurrently with section 128.7. (§ 128.6, subd. (f).) It is highly unlikely the Legislature would duplicate section 128.5, word for word, in a statute that expressly does not overlap with section 128.7 if it intended sections 128.5 and 128.7 to apply in tandem. If sections 128.5 and 128.7 did operate concurrently, and section 128.7 became inoperative because the Legislature chose not to extend its sunset date, sections 128.5 and 128.6 would apply at the same time, a result the Legislature cannot reasonably have intended.

■ Indeed, the legislative history of the 1994 amendments to section 128.5 makes it clear that the Legislature intended sections 128.5, 128.6, and 128.7 to apply independently, during different time frames. Early drafts of Assembly Bill No. 3594 would have repealed current section 128.5 in its entirety, then enacted a new section 128.5 to mirror current section 128.7. (Assem. Amend. to Assem. Bill No. 3594, Apr. 21, 1994; see Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3594, as amended Apr. 26, 1994, p. 2 ["This bill [r]epeals Code of Civil Procedure Section 128.5" and "[r]e-enacts Section 128.5 to, essentially, replicate the recently revised Federal Rule 11"].)

Later, the Assembly decided to amend, rather than repeal, section 128.5, and to enact a separate statute, current section 128.7. (Assem. Amend. to Assem. Bill No. 3594, May 18, 1994.) This amendment limited section 128.5(b)(1)'s definition of "actions or tactics" to those that arise from a "complaint filed or proceeding initiated on or before December 31, 1994" and specified that section 128.7 would "only apply to actions filed on, or after, January 1, 1995." (Assem. Amend. to Assem. Bill No. 3594, May 18, 1994; see also Assem. Com. on Judiciary, 3d reading analysis of Assem. Bill No. 3594, as amended May 18, 1994, p. 2 [as amended, bill amends § 128.5 "to state that it shall only apply to actions filed on, or before, December 31, 1994"].) Thereafter, the Senate modified the bill by adding a January 1, 1999, sunset date to section 128.7, and providing for the enactment of section 128.6, to become effective only if and when section 128.7 was no longer in force. (Sen. Amend. to Assem. Bill No. 3594, Aug. 23, 1994.)

Although the legislative history does not explain why the Legislature elected to amend, rather than repeal, section 128.5, it does confirm that the Legislature did not intend for sections 128.5, 128.7, and 128.6 to apply concurrently. With respect to all versions of Assembly Bill No. 3594, beginning with the Assembly amendment of May 18, 1994, the Legislative Counsel's Digest stated that the bill would, while section 128.7 was in effect, "limit the applicability of [section 128.5] to actions or tactics that arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994."

(Legis. Counsel's Dig., Assem. Bill No. 3594, as amended May 18, 1994; Legis. Counsel's Dig., Assem. Bill No. 3594, as amended May 23, 1994; Legis. Counsel's Dig., Assem. Bill No. 3594, as amended Aug. 23, 1994; Legis. Counsel's Dig., Assem. Bill No. 3594, 5 Stats. 1994, Summary Dig., p. 431.) No contrary statements appear anywhere in the legislative history of Assembly Bill No. 3594.

■ It thus appears clear that the Legislature did not intend for section 128.5(a) to apply to actions filed after December 31, 1994. Rather, it meant for section 128.7 to replace the sanctions scheme set forth in section 128.5(a) for a four-year trial period lasting until January 1, 1999, unless extended. If, at the conclusion of this trial period, the Legislature failed to extend the operation of section 128.7, a statute identical to section 128.5 would take effect.

In 1998 and 2002, the Legislature reenacted section 128.7 by extending its sunset date. (Stats. 1998, ch. 121, § 2; Stats. 2002, ch. 491, § 1.) These actions also buttress our interpretation of section 128.5. " 'When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute. [Citation]' " (*People v. Ledesma* (1997) 16 Cal.4th 90, 100–101 [65 Cal.Rptr.2d 610, 939 P.2d 1310], quoting *People v. Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].)

In 1998, the Legislature extended section 128.7's sunset date to January 1, 2003. (*Id.*, former subd. (j), as amended by Stats. 1998, ch. 121, § 2.) At the time of the 1998 legislation, a number of courts (including this court) had indicated in dicta that section 128.7 "suspend[s] the operation of section 128.5." (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 481, fn. 8 [66 Cal.Rptr.2d 319, 940 P.2d 906] ["Section 128.5 currently applies only to actions . . . filed before December 31, 1994. . . . As to actions filed after that date, the Legislature has suspended operation of section 128.5 until January 1, 1999, substituting in its place on a trial basis section 128.7"]; *Crowley, supra,* 8 Cal.4th 666, 690, fn. 13; see *Murphy v. Yale Materials Handling Corp.* (1997) 54 Cal.App.4th 619, 623 [62 Cal.Rptr.2d 865]; see also *Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 369–370 [70 Cal.Rptr.2d 449] [declining to address whether §§ 128.5 and 128.7 apply concurrently, but noting that the legislative history of § 128.5, numerous practice guides, and dicta from other appellate courts support the view that "section 128.5 has been 'suspended' while section 128.7 is in effect"].)

In 2002, the Legislature pushed the sunset date of section 128.7 back to January 1, 2006. (*Id.*, subd. (j), as amended by Stats. 2002, ch. 491, § 1.)

Between 1998 and 2002, other appellate courts stated in dicta that section 128.7 "replaced" section 128.5. (*Dana Commercial Credit Corp v. Ferns & Ferns* (2001) 90 Cal.App.4th 142, 146, fn. 7 [108 Cal.Rptr.2d 278] [§ 128.5 "is now limited to actions filed before December 31, 1994, and has been temporarily replaced by section 128.7"]; *Bryan v. Bank of America* (2001) 86 Cal.App.4th 185, 196–197 [103 Cal.Rptr.2d 148] [same].)

In fact, prior to the Court of Appeal's decision in this case, every appellate court to consider the relationship between sections 128.5 and 128.7 concluded that section 128.7 "suspended" or "replaced" section 128.5. Under the principle of "legislative acquiescence," we may presume that the Legislature was aware of, and acquiesced to, these decisions when it twice reenacted section 128.7.

The legislative history of the bill by which section 128.7 was extended in 1998 (Sen. Bill No. 1511 (1997–1998 Reg. Sess.) (Senate Bill No. 1511)) bolsters this presumption, because it expressly acknowledges decisions expressing the view that "section 128.5 has been 'suspended' while section 128.7 is in effect." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1511, as amended May 5, 1998, pp. 4–5.) It is reasonable to assume that if the Legislature disagreed with this interpretation, it would have clarified the relationship between sections 128.5 and 128.7 when it reenacted the latter statute.

Finally, the legislative histories of the 1998 and 2002 bills that extended section 128.7 are replete with statements that section 128.5 does not apply in actions filed after December 31, 1994. A Senate floor analysis summarizing the 1998 bill explained that "Sections 128.5 and 128.7 establish two separate procedures for sanctioning frivolous actions. For cases filed on or after January 1, 1995, Section 128.7 applies. For cases filed before that date, Section 128.5 applies . . . . If [this] bill fails, a provision virtually identical to Section 128.5 [i.e., section 128.6] will take effect." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1511, as amended May 5, 1998, pp. 1–2.) The analysis stated that the Judicial Council opposed the 1998 bill because it did not "permit sanctions . . . for frivolous conduct as well as filings." (*Id.* at p. 2.) However, the analysis concluded that the bill "still appears to accomplish the laudable objective of deterring frivolous lawsuits and filings *without the inclusion of sanctions for conduct or tactics outside the scope of Section 128.7.*" (*Ibid.,* italics added.) An analysis prepared by the Assembly Committee on the Judiciary echoed these findings. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1511, as amended May 5, 1998, pp. 2, 6–7.)

In an analysis of the 2002 bill (Sen. Bill No. 2009 (2001–2002 Reg. Sess.) (Senate Bill No. 2009)), the Senate Committee on the Judiciary noted that if section 128.7's sunset date were not extended, section 128.7 "would . . . be replaced by a new Section 128.6, which would impose the same sanctions that Section 128.5 *did* . . . as a result of actions or tactics that are frivolous or solely intended to cause unnecessary delay." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2009 as introduced Feb. 22, 2002, p. 4, italics added.)

Although legislative declarations "as to the meaning of a preexisting statute [are] neither binding nor conclusive" (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1007 [90 Cal.Rptr.2d 236, 987 P.2d 705]), they " 'are entitled to due consideration and . . . may properly be used in determining the effect of a prior act.' " (*Id.*, at p. 1008, quoting *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 [62 Cal.Rptr.2d 243, 933 P.2d 507].) At a minimum, this history demonstrates that our interpretation of section 128.5 comports with the Legislature's recent understanding of the interplay among sections 128.5, 128.6, and 128.7.

Defendants note that a number of statutes governing special proceedings, some enacted since the 1994 amendment of section 128.5, expressly refer to section 128.5 as the model for awarding sanctions for abusive or frivolous conduct in particular circumstances. This incorporation of section 128.5 in other statutes, defendants assert, demonstrates that section 128.5 retains vitality and that the Legislature did not intend to preclude all general application of section 128.5 to post-1994 cases.

The correct response was given by the Court of Appeal in *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382 [129 Cal.Rptr.2d 892] (*Decker*). As the court there noted, a cross-reference to section 128.5 in another sanction statute is not properly read "as resuscitating section 128.5. Rather, . . . [such] reference . . . [simply] means a court must *use the procedures* and *apply the substantive standards* of section 128.5 in deciding whether to award attorney fees" under the other statute. (*Decker, supra*, at p. 1392, italics added.)

We agree. That the Legislature has incorporated section 128.5's procedures, standards, or definitions in separate statutes which apply *in particular con-*

*texts* does not undermine the conclusion that section 128.5, invoked in its own right, is generally inapplicable to actions and proceedings commenced after 1994.[7]

Defendants urge that the Legislature could not have intended to divest trial courts of authority to impose sanctions for misconduct not related to pleadings or motions. They assert that because the Legislature first enacted section 128.5 to broaden trial courts' authority to punish litigation abuses, it is absurd to read section 128.5, as amended in 1994, in a manner that undercuts this purpose.

We reject this contention for two reasons. First, the Legislature's intent is clear from the language and legislative history of section 128.5 and related statutes. Second, defendants' assertion of "absurdity" proceeds from the flawed premise that, once having enacted a broader sanction scheme, the Legislature could not rationally substitute a narrower one. But there are other ways to sanction litigation abuses, and the Legislature's policy choice is well within the range of rational lawmaking. We thus find no basis to conclude that our construction of section 128.5, supported by multiple indicia of legislative intent, is absurd.[8]

---

[7] The statute at issue in *Decker, supra,* 105 Cal.App.4th 1382, was section 425.16, subdivision (c), part of the so-called anti-SLAPP (strategic lawsuit against public participation) law. Under the anti-SLAPP law, in a suit arising from the defendant's exercise of his constitutional free speech or petition rights, the defendant may bring a special motion to strike the complaint on grounds the plaintiff has failed to demonstrate a probability of success on the merits. (§ 425.16, subd. (b)(1).) Section 425.16, subdivision (c) allows a plaintiff who prevails against such a motion to recover fees "pursuant to Section 128.5" upon a finding that the motion was frivolous or intended for unnecessary delay. Defendants here have identified eight other statutes that make similar references to section 128.5 in particular contexts. We have carefully examined each of these laws and find no basis to conclude that any of them "resuscitat[es]" section 128.5 for purposes of general application to post-1994 actions and proceedings.

[8] Defendants, like the Court of Appeal, note that section 128.7 was closely modeled on rule 11 of the Federal Rules of Civil Procedure, and they argue that, as the Legislature must have known, the federal rule operates *in addition* to the federal courts' inherent power to sanction litigation abuses. (See *Chambers v. NASCO, Inc.* (1991) 501 U.S. 32, 48–49 [115 L.Ed.2d 27, 111 S.Ct. 2123]; see also Advisory Com. Notes, 1983 amend. to Fed. Rules Civ. Proc., rule 11, reprinted at 28 U.S.C.A. (1992 ed.) foll. rule 11, p. 697.) Hence, it is suggested that section 128.7, by specifying particular forms of sanctionable misconduct in post-1994 actions, cannot have intended otherwise to return California, in cases initiated after 1994, to the no-fees-as-sanctions rule of *Bauguess, supra,* 22 Cal.3d 626. As explained above, however, the most plausible reading of section 128.5's language, the careful interplay between sections 128.5, 128.6, and 128.7, and the many expressions of legislative intent that the sanctions regimes established by these statutes be mutually exclusive, negate defendants' claim that section 128.5, the statute at issue here, has any effect in suits commenced after December 31, 1994.

## CONCLUSION AND DISPOSITION

We conclude that 128.5(a) does not authorize trial courts to impose sanctions for any form of litigation misconduct arising "from a complaint filed, or a proceeding initiated" after December 31, 1994. Accordingly, we reverse the judgment of the Court of Appeal insofar as it reached a contrary result, which will have the effect of reinstating the trial court's order denying sanctions under section 128.5.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.