Filed 2/16/21  Wittenberg v. Bornstein CA1/3
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMY WITTENBERG,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DANIEL BORNSTEIN et al.,<br><br>     Defendants and Appellants. | A154752<br><br>(Alameda County<br>Super. Ct. No. RG17878949) |

Amy Wittenberg, co-owner and managing member of Hertzel Enterprises LLC (Hertzel), sued attorney Daniel Cravens for breach of fiduciary duty, professional negligence, and other claims relating to his legal representation of Hertzel.  Cravens appeals after the trial court denied his special motion to strike under the anti-SLAPP law (Code Civ. Proc., § 425.16, et seq.).  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

According to Wittenberg's first amended complaint (FAC), Wittenberg and defendant Daniel Bornstein[2] are each 50 percent owners and co-

---

[1]    This appeal is related to two prior appeals decided by this court—*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556 and *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303 (*Wittenberg I*).  We limit our recitation of facts to those relevant to our determination of the issues presented here.

[2]    We refer to Daniel Bornstein as "Bornstein" throughout this opinion.  Bornstein's brother is referred to as "Jonathan Bornstein."

1

managing members of Hertzel, a limited liability company in the business of real estate investment. Under Hertzel's operating agreement, neither manager has the authority to act on the company's behalf without the other manager's approval and consent.

The FAC asserts twenty causes of action, both individually and derivatively on behalf of Hertzel, against numerous defendants including Bornstein and Cravens. As relevant here, Wittenberg alleges that Bornstein stole Hertzel trust funds to purchase investment properties for himself, collected rents from tenants of Hertzel properties and used them for his own purposes, failed to account for Hertzel's trust funds, and failed to disclose these matters to Hertzel or Wittenberg. Daniel also allegedly usurped investment opportunities from Hertzel and used Hertzel's confidential information to do so.

The fourth, fifth, eighth through eleventh, fifteenth through eighteenth, and twentieth causes of action are brought against Cravens.[3] In the fifth cause of action for negligent handling of legal matter, Wittenberg alleges that in September 2016, during litigation between Bornstein, his brother and former law partner Jonathan Bornstein, and numerous related individuals and entities, Hertzel filed a cross-complaint against Bornstein and others alleging that he and his co-conspirators usurped business opportunities from Hertzel and stole the company's trust funds. Hertzel was represented by Cravens, while Bornstein was represented by attorney Yosef Peretz. However, Cravens failed to disclose to Wittenberg and Hertzel that

---

[3] Only the fourth, fifth, seventeenth, and eighteenth causes of action mention Cravens by name. The eighth through eleventh, fifteenth, sixteenth, and twentieth causes of action contain no specific allegations about Cravens but are asserted against "all defendants" and incorporate all prior allegations of the FAC.

2

he was concurrently serving as Peretz's attorney in other litigation. Moreover, Cravens and Peretz allegedly prepared and filed a dismissal with prejudice of Hertzel's cross-complaint without Wittenberg's and Hertzel's informed consent.

The fourth cause of action for breach of fiduciary duty similarly alleges that Cravens breached his duties of care, loyalty and confidentiality "by preparing and filing a dismissal with prejudice of all of Hertzel's claims against Daniel Bornstein and several other defendants while maintaining a personal friendship and professional relationship with Daniel Bornstein," and without disclosing his prior relationships with Bornstein and Peretz. Wittenberg alleges she and Hertzel were harmed because they were defrauded into dismissing with prejudice numerous claims they held against Bornstein, and they were forced to retain counsel to set aside the dismissal fraudulently procured by Cravens.

The remaining causes of action against Cravens are for negligence per se (eighth cause of action), fraud and deceit by misrepresentation, concealment, and non-disclosure of superior knowledge (ninth, tenth, and eleventh causes of action, respectively), conversion (fifteenth cause of action), common count for money had and received (sixteenth cause of action), aiding and abetting (seventeenth cause of action), conspiracy (eighteenth cause of action), and constructive trust (twentieth cause of action).

### *The Anti-SLAPP Motion*

Cravens filed a special motion to strike the fourth, fifth, eighth through eleventh, and fifteenth through eighteenth causes of action, arguing these claims arose from protected activity because they targeted his litigation conduct, specifically his preparation and filing of the request for dismissal of Hertzel's cross-complaint. He further argued that Wittenberg could not show

3

a likelihood of prevailing on her claims against him because (1) she could not establish an attorney-client relationship, and (2) the claims were barred by the litigation privilege.

Cravens's supporting declaration established the following facts. Wittenberg and Bornstein agreed to hire Cravens and dismiss Hertzel's cross-complaint in a "management resolution dated March 7, 2017," which was signed by both Bornstein and Wittenberg. The Hertzel cross-complaint "had been improperly filed by Jonathan [Bornstein] on behalf of Hertzel. Wittenberg demanded a cash distribution from Hertzel in order to secure her cooperation." During these negotiations, Wittenberg was represented by attorney Ari Lauer, and she and Bornstein ultimately agreed that Wittenberg would receive "a $50,000 distribution, that Hertzel would dismiss [its cross-complaint], and that Hertzel would hire Cravens to represent it." "Pursuant to [the] March 7, 2017 management resolution, Cravens filed a dismissal of the Hertzel Cross-Complaint with prejudice on March 8, 2017."

Cravens further avers that in November 2017, Wittenberg accused him of being " 'in cahoots' " with Bornstein. Cravens requested that Hertzel send a substitution of attorney form if the company wished to replace him as counsel, but neither Hertzel nor Wittenberg sent the form. In January 2018, Wittenberg demanded that Cravens move to set aside the dismissal of Hertzel's cross-complaint and threatened legal action if he failed to do so. Cravens did not file the motion, and Wittenberg filed the FAC alleging the aforementioned claims against him.

According to Cravens, he "had no personal, professional, business, or other dealings of any kind whatsoever with [Bornstein], his wife Renuka Bornstein, or any of the business entities they control prior to [his] retention as Hertzel's counsel." Cravens further states he had no dealings with

4

Hertzel, Bornstein, Jonathan Bornstein, or Wittenberg prior to his retention as Hertzel's counsel. Peretz had referred Hertzel to Cravens, and Cravens discussed this referral with Wittenberg's attorney, Lauer, who voiced no objection. Cravens further states that he represented Hertzel, not Bornstein or Wittenberg, and never gave Wittenberg legal advice or entered into a representation agreement with her. Cravens states he has not colluded with or aided and abetted Bornstein or Peretz in any way. Although Cravens provided legal representation to Peretz on one occasion in 2016, the representation ended in June 2017.

In opposition to the anti-SLAPP motion, Wittenberg argued that the challenged causes of action did not arise from protected activity because the principal thrust of her claims against Cravens was not his litigation conduct but his acceptance of representation of adverse parties without disclosing his prior relationships with Bornstein and Peretz to Hertzel and Wittenberg. Wittenberg further contended that even if the challenged causes of action arose from protected activity, she showed a probability of prevailing because neither she nor the Hertzel management resolution authorized dismissal of the Hertzel cross-complaint *with prejudice*. Wittenberg argued that Cravens, in undertaking to represent Hertzel, assumed an attorney-client relationship with her as intended beneficiary of his representation, as she was a 50 percent shareholder of Hertzel, and Cravens knew that management and control of Hertzel was conducted by Bornstein and Wittenberg jointly.

In her supporting declaration, Wittenberg states that in September 2016, she authorized attorney Susan Breed to file Hertzel's cross-complaint against Bornstein and others because Wittenberg was concerned that Bornstein and others were converting assets and stealing money from the company. Breed was eventually replaced by attorney Pamela Jackson. In

5

October 2016, Bornstein retained Cravens to serve as Hertzel's outside counsel "ostensibly to defend Hertzel from certain lawsuits filed by Jonathan Bornstein," but Cravens "actually, and more accurately, represented the interests of Daniel Bornstein against the Company." Bornstein did not consult with Wittenberg, and she did not consent to retaining Cravens as the company's outside counsel. Wittenberg states, "Had I known I would not have agreed to retain Mr. Cravens to represent Hertzel because of his prior personal and professional relationships with Daniel Bornstein and Yosef Peretz."

Wittenberg further avers that in March 2017, Peretz proposed that Hertzel dismiss its cross-complaint in order to "remove the matter from the pressures and strict schedule of court supervised litigation" and "provide us with time to negotiate a settlement of the issues surrounding the ownership and management of Hertzel." Peretz prepared a management resolution for Hertzel stating that the managers agreed to replace Jackson with Cravens as the company's attorney and to dismiss the cross-complaint filed against Bornstein because it was improperly filed without the unanimous consent of the Hertzel managers. The resolution did not say the dismissal would be with prejudice or constitute a full and final settlement of all claims filed by Hertzel against Bornstein and the other defendants. Although the resolution called for Bornstein and Wittenberg to each receive $50,000 in distributions, this was not consideration for dismissal with prejudice of the Hertzel cross-complaint; rather, it was a distribution that Bornstein had previously offered to Wittenberg in 2015. In discussing Peretz's proposal, Lauer told Wittenberg that if the parties' negotiations failed, she could refile a lawsuit against Bornstein seeking to redress the grievances contained in the original Hertzel cross-complaint, and she would not be relinquishing any claims

6

against Bornstein. Accordingly, Wittenberg signed the substitution of attorney form allowing Cravens to replace Jackson as the attorney prosecuting Hertzel's cross-complaint against Bornstein.

Cravens never spoke to Wittenberg about whether the dismissal was to be with or without prejudice. At no time did Wittenberg provide informed written consent to file the dismissal with prejudice. Wittenberg alleges: "On March 8, 2017, Yosef Peretz, Daniel Bornstein's attorney, filed the dismissal with prejudice with the court via facsimile." The trial court entered the dismissal with prejudice the next day.

Wittenberg later learned that Bornstein and Cravens were personal friends and that Cravens had served as Peretz's personal attorney. In September 2017, Wittenberg learned that Bornstein and his wife had taken money from Hertzel, and that Bornstein and one of his businesses had been charged by the California Bureau of Real Estate with numerous violations regarding trust account usage. In November 2017, Wittenberg learned from her new attorneys that Cravens and Peretz had dismissed the cross-complaint with prejudice. Wittenberg's counsel contacted Cravens and instructed him to correct his mistake, but Cravens did not respond.[4]

---

[4] Wittenberg has requested judicial notice of various court records from the proceedings below, including her motion to set aside the dismissal of the Hertzel cross-complaint, the briefs and declarations, and the trial court's order on the motion. We deferred consideration of the motion pending consideration of the appeal on its merits, and we now grant it. (Evid. Code, § 452, subd. (d).) The judicially-noticed materials establish that in March 2018, Wittenberg moved to set aside the dismissal with prejudice of the Hertzel cross-complaint. In June 2018, the trial court granted the motion and vacated the request for dismissal.

The trial court denied Cravens's anti-SLAPP motion, finding that the challenged causes of action fell within an exception to the anti-SLAPP law for actions by clients against their attorneys.[5]

Cravens appealed.

## DISCUSSION

Code of Civil Procedure section 425.16[6] authorizes a special motion to strike claims arising from any act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16, and if the defendant makes this showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) On appeal, we review the trial court's ruling on the anti-SLAPP motion de novo. (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 339.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063.) "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1059.)

---

[5] Cravens requests judicial notice of the trial court's order denying his anti-SLAPP motion and our opinion in *Wittenberg I.* We deferred consideration of this request pending consideration of the appeal on its merits, and we now grant it. (Evid. Code, §§ 451, subd. (a), 452, subd. (d).)

[6] All unlabeled statutory references are to this code.

Protected activity under the anti-SLAPP statute includes written and oral statements made before a judicial proceeding (§ 425.16, subd. (e)(1)) or made in connection with an issue under consideration or review by a judicial body (*id.*, subd. (e)(2)). "Filing a lawsuit is an exercise of one's constitutional right of petition, and statements made in connection with or in preparation of litigation are subject to section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.)

A cause of action arising from acts committed by attorneys in representing clients in litigation may appropriately be the subject of an anti-SLAPP motion. (*PrediWave v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1221 (*PrediWave*).) However, a client's action against his or her attorney, whether it is pleaded as a claim for malpractice, breach of fiduciary duty, or any other theory of recovery, is not subject to the anti-SLAPP statute "merely because some of the allegations refer to the attorney's actions in court." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1275.) When the allegations referring to litigation activity " ' "are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." ' " (*Id.* at p. 1273.)

In *PrediWave*, the Court of Appeal held that the "the principal thrust" of the plaintiff's causes of action against their former attorneys was that the attorney-defendants simultaneously represented parties in matters in which they had an irreconcilable conflict of interest, which adversely affected the defendants' choice of legal strategy and resulted in their repeated failures to take action to safeguard the plaintiff's interests. (*PrediWave, supra*, 179 Cal.App.4th at pp. 1226–1227.) The court concluded that the defendants' continuation of joint representation, their legal strategies and

9

noncommunicative conduct, and their alleged failures to act were not statements or writings within the meaning of the anti-SLAPP statute. (*Id.* at p. 1227.) The court further held that even if the plaintiff was seeking to hold the defendants liable for litigation activities they performed on the plaintiff's behalf, this did not fall within the scope of the anti-SLAPP law, as "clients do not bring such lawsuits to deter the speech and petitioning activities done by their own attorneys on their behalf but rather to complain about the quality of the former attorneys' performance." (*Id.* at p. 1227.)

In so concluding, *PrediWave* outlined three categories of cases against attorneys relating to the anti-SLAPP law: (1) clients' causes of action against attorneys based upon the attorney's acts on behalf of those clients; (2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients; and (3) non-clients' causes of action against attorneys. (*PrediWave*, *supra*, 179 Cal.App.4th at p. 1227.) Only the first category of cases may be outside the ambit of the anti-SLAPP law. (*Ibid.*)

In *Loanvest I LLC v. Utrecht* (2015) 235 Cal.App.4th 496 (*Loanvest*), a corporate entity sued its former attorney for malpractice, alleging he had breached his duty of loyalty to the company by taking legal positions in a prior litigation that were intended to benefit the company's previous manager, who controlled the company. Relying on *PrediWave* and other decisions in accord, *Loanvest* held that "[w]here . . . a legal malpractice action is brought by an attorney's former client, claiming the attorney breached fiduciary obligations to the client as the result of a conflict of interest or other deficiency in the representation of the client, the action does not threaten to chill the exercise of protected rights and the first prong of the anti-SLAPP analysis is not satisfied. (*Loanvest*, *supra*, 235 Cal.App.4th at p. 504.)

10

As in *PrediWave* and *Loanvest*, the challenged causes of action here arise out of an attorney's representation of his client despite his alleged conflicts of interest. Cravens's alleged failure to disclose his personal and professional relationships with Hertzel's litigation adversary (Bornstein) and opposing counsel (Peretz) was not protected speech or petitioning activity. Indeed, it was not speech at all, but the *absence* of disclosures allegedly required by the California Rules of Professional Conduct. (Rules Prof. Conduct, rule 1.7.) While the FAC further alleges that Cravens, along with Peretz, "prepared and filed" the dismissal with prejudice of Hertzel's cross-complaint without Wittenberg's informed consent, the claims based on this allegation do not arise from the litigation conduct itself. Rather, the principal thrust of these claims is Cravens' negligence and/or violation of his duty of undivided loyalty in effectuating a dismissal with prejudice that contravened Hertzel's interests and advanced the interests of his client's adversary. There is no chilling effect on advocacy in such claims; rather, the threat of liability encourages an attorney like Cravens to act competently and loyally. (*Loanvest, supra*, 235 Cal.App.4th at p. 504; *PrediWave, supra*, 179 Cal.App.4th at p. 1222.)

Cravens argues the *PrediWave* category 1 exception does not apply to Wittenberg's individual claims because she was not Cravens's client. He further contends the exception does not apply to Wittenberg's derivative claims because they are not true derivative claims, as they do not distinguish between any injury Wittenberg suffered individually from injury to Hertzel. These contentions, however, go to the underlying merits of the claims, which is an inquiry specifically reserved for the second step of the anti-SLAPP analysis. (*Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 155–157 [arguments regarding absence of attorney-client relationship improperly

11

conflated first and second anti-SLAPP prongs].)  At the first anti-SLAPP stage, our " 'sole inquiry' " is whether the challenged causes of action arise from protected activity, and "[i]n making this determination, '[w]e do not consider the veracity of [the plaintiff's] allegations [citation] nor do we consider '[m]erits based arguments' [citation]." (*Id.* at p. 157.)

In his reply brief, Cravens argues that our determination in *Wittenberg I* applies directly here.  In that case, we partially reversed the trial court's denial of Peretz's anti-SLAPP motion after concluding that Peretz's alleged conduct of preparing and filing the dismissal with prejudice of the Hertzel cross-complaint was protected litigation conduct.  (*Wittenberg I, supra,* 50 Cal.App.5th at pp. 315–317.)  There is a critical distinction, however.  The holding in *Wittenberg I* was based on our observation that Wittenberg's causes of action against Peretz did not fall squarely within any of the *PrediWave* categories.  (*Id.* at pp. 314–315.)  Peretz, unlike Cravens, was not acting as Hertzel's counsel at the time he allegedly prepared and filed the dismissal form, yet he was also not acting solely on behalf of another client in taking these actions.  (*Ibid.*)  Here in contrast, the challenged conduct is Cravens's performance as counsel for Hertzel, which falls squarely within the *PrediWave* category 1 exception and, therefore, outside the ambit of the anti-SLAPP law.  (*PrediWave, supra,* 179 Cal.App.4th at p. 1227.)

Because Cravens did not carry his burden to demonstrate that the challenged causes of action arose from protected activity, the burden did not shift to Wittenberg to show a probability of prevailing.  (*Baral, supra,* 1 Cal.5th at p. 384.)  Accordingly, the anti-SLAPP motion was properly denied.

In closing, we note that Wittenberg makes a perfunctory request for attorney fees under section 425.16, subdivision (c)(1).  (See *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1500–1501 [section 425.16, subdivision (c) allows

12

for recovery of appellate attorney fees by prevailing defendant-respondent].)
The request is denied because Wittenberg provides no meaningful factual or
legal analysis to support a finding that the appeal was frivolous or solely
intended to cause unnecessary delay. (§ 425.16, subd. (c)(1); *Chitsazzadeh v.
Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 683–684 [whether motion is
solely intended to cause unnecessary delay concerns subjective motivation of
moving defendant]; *Carpenter v. Jack in the Box Corp.* (2007) 151
Cal.App.4th 454, 469 [frivolous means motion is " 'totally and completely
without merit' "].)

## DISPOSITION

The order denying Cravens's anti-SLAPP motion is affirmed.
Wittenberg is entitled to her costs on appeal, but her request for attorney fees
under section 425.16, subdivision (c)(1), is denied.

13

_____
Fujisaki, Acting P.J.

WE CONCUR:


_____
Jackson, J.


_____
Wiseman, J.[7*]


A154752


_____
[*]     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14